United States District Court
Southern District of Texas
**ENTERED**
October 03, 2025
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**LAREDO DIVISION**

| | | |
|---|---|---|
| **JOSE PADRON COVARRUBIAS,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 5:25-CV-112** |
| | § | |
| **MIGUEL VERGARA, ET AL.,** | § | |
| | § | |
| **Respondents.** | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Jose Padron Covarrubias is currently in custody of the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE) officials at the Rio Grande Processing Center in Laredo, Texas. (Dkt. No. 3 at 8). He has filed a petition for habeas corpus to challenge his continued detention. (Dkt. No. 3). Before the Court is Respondents' Motion to Dismiss Petitioner's Petition for Writ of Habeas Corpus, (Dkt. No. 20), to which Padron has filed a response in opposition, (Dkt. No. 22).

## I. BACKGROUND

Padron is a citizen of Mexico. (Dkt. No. 20-2 at 1). The petition and his immigration record reflect that he crossed the international border near Laredo, Texas, on or about September 16, 2001, when he was twenty-six years old and has been living in the United States for twenty-four years. (Dkt. No. 3 at 9; Dkt. No. 20-2 at 2). He claims that he has significant family ties in the United States and has U.S. citizen children. (Dkt. No. 3 at 10).

On May 29, 2025, ICE officials apprehended Padron while executing a search warrant at a construction site in Tallahassee, Florida. (Dkt. No. 3 at 6–7; *see also* Dkt. No. 20-2 at 2). Form I-213, Record of Deportable/Inadmissible Alien, a document provided by Respondents, reflects that Enforcement and Removal Operations (ERO) Miami Field Office transferred Padron to El Paso, Texas, for processing due to lack of space. (Dkt. No.

20-2 at 2). Padron's immigration record states that "ERO El Paso processed [Padron] as Warrant of Arrest / Notice to Appear." (*Id.* at 3).[1] The Notice to Appear designated Padron as "an alien present in the United States who has not been admitted or paroled," rather than "an arriving alien." (Dkt. No. 20-3 at 1). The Notice to Appear also states that Padron "entered the United States at or near Laredo, Texas, on or about September 16, 2001," twenty-four years ago. (*Id.*). It further states that he "was not admitted or paroled after inspection by an Immigration Officer." (*Id.*). Thus, the documents provided by Respondents show that Padron was apprehended in Tallahassee, Florida, after having been in the United States for almost twenty-four years, and that he was initially processed in El Paso under a "Warrant of Arrest/Notice to Appear." (*See* Dkt. Nos. 20-2, 20-3). The "Notice to Appear" charged Padron with being an inadmissible alien pursuant to Section 212(a)(6)(A)(i) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1182(a)(6)(A)(i), in removal proceedings under 8 U.S.C. § 1240. (Dkt. No. 20-3). He has been detained since his apprehension.

On June 25, 2025, Padron sought redetermination of his custody in immigration court. He claims that the Immigration Judge (IJ) did not entertain his arguments that he was detained under 8 U.S.C. § 1226(a) (INA § 236(a)) and did not consider whether he was a flight risk or a danger to the community. Instead, Padron contends:

> [T]he DHS counsel was permitted to present arguments, where its counsel stated to the IJ: "The [petitioner] would fall under Q. Li, he was picked up during a sweep . . . not pursuant to a warrant, your Honor." The IJ then opined: "Because the [DHS] is arguing that Q. Li applies, that would be a legal argument. So at this time, I'm going to deny [the custody redetermination request]."

(Dkt. No. 3 at 3). The IJ found that Padron "is ineligible for bond pursuant to Matter of Q Li as he is an applicant for admission arrested and detained without a warrant and therefore his detention is pursuant to [INA] Section 235(b)." (Dkt. No. 20-4).

Padron contends that he should have been placed in detention under INA § 236 (8 U.S.C. § 1226(a)), rather than INA § 235(b) (8 U.S.C. § 1225(b)), and that the IJ erred as a matter of law. He maintains that whether he is detained subject to § 235 or § 236 is a

[1] Respondents provided a redacted copy of Padron's Form I-213, "Record of Deportable/Inadmissible Alien," Form I-862, "Notice to Appear," and some of the record of the proceedings in immigration court, but they did not provide Padron's Form I-286, "Notice of Custody Determination" or an I-200, "Warrant of Arrest," with their motion. (*See* Dkt. No. 20 and attachments thereto).

matter of pure statutory construction. He argues that because he is not a flight risk or a danger to the community and has been continuously present in the United States for more than 2 years, he should be eligible for a bond hearing under § 236(a). He contends that "Respondents do not dispute that DHS has placed him into 'regular' removal proceedings under 8 U.S.C. § 1229(a)." (Dkt. No. 22 at 7). He further claims that DHS never completed Forms I-867AB or I-860, which are required for expedited removal.

Padron filed an appeal of the IJ's decision with the Board of Immigration Appeals (BIA) on July 3, 2025, which remains pending. (*Id.* at 18). Padron also applied for Cancellation of Removal on Form EOIR-42B, as a person who has been in the United States for ten years with significant family ties to U.S. citizens. (*See id.* at 14). His removal hearing in immigration court is set for October 24, 2025. (*Id.* at 17). However, there is no indication in the record or the submissions of the parties that BIA has set a hearing on his bond issue or that his appeal will be heard before his final removal hearing. On July 8, 2025, Padron filed this petition for habeas corpus seeking declaratory and injunctive relief to remedy his unlawful detention without a bond hearing. (Dkt. No. 3 at 1–2).

Respondents move to dismiss, claiming that this Court lacks jurisdiction to review the bond decision and that Padron has not exhausted administrative remedies. (*See* Dkt. No. 20). Padron counters that, among other things, this Court has jurisdiction over his due process claims; habeas is the proper vehicle to challenge unlawful detention; and exhaustion is not statutorily required and should be waived because it would be futile. (*See* Dkt. No. 22).

## II. LEGAL STANDARDS

### A. Rule 12(b)(1)

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (citation omitted). When reviewing a motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1), a district court may dismiss the action based upon: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the Court's resolution of disputed facts. *Williams v. Wynne,* 533 F.3d 360, 365 n.2 (5th Cir.

2008). The party who invokes federal court jurisdiction bears the burden of showing that jurisdiction is proper. *Hartford Ins. Group v. Lou–Con Inc.,* 293 F.3d 908, 910 (5th Cir. 2002).

**B. Rule 12(b)(6)**

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must determine whether a plaintiff has stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (citation modified). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). This does not require detailed factual allegations but does require "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. The Court must "accept as true all well-pleaded facts." *Rosenblatt v. United Way of Greater Hou.*, 607 F.3d 413, 417 (5th Cir. 2010). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

**C. 28 U.S.C. § 2241**

Section 2241(c)(1) "applies to persons held 'in custody under or by color of the authority of the United States.'" *Munaf v. Geren*, 553 U.S. 674, 686 (2006) (citing 28 U.S.C. § 2241(c)(1)). "An individual is held 'in custody' by the United States when the United States official charged with his detention has 'the power to produce' him." *Id.* (quoting *Wales v. Whitney,* 5 S. Ct. 1050, 1054 (1885) and citing 28 U.S.C. § 2243 ("The writ . . . shall be directed to the person having custody of the person detained")).

Habeas corpus is available to a person challenging the legality of immigration-related detention. *Demore v. Kim*, 538 U.S. 510, 517 (2003); *Gudiel Polanco v. Garland*, 839 F. App'x 804, 805 (4th Cir. 2021) (per curiam) (holding that where the alien challenged his detention rather than any removal order, his challenge "must be brought

pursuant to a habeas corpus petition" in district court). Courts retain jurisdiction to review an alien's detention "insofar as that detention presents constitutional issues, such as those raised in a habeas petition." *Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005) (unpublished).

**D. 8 U.S.C. Sections 1226 and 1225**

Section 1226 provides the general process for arresting and detaining noncitizens who are present in the United States and eligible for removal. 8 U.S.C. § 1226. The Supreme Court has explained that Section 1226(a) "sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of an alien 'pending a decision on whether the alien is to be removed from the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) (quoting § 1226(a)). "[T]he Attorney General may release an alien detained under § 1226(a) on bond or conditional parole." *Jennings*, 583 U.S. at 288 (citation modified). But "aliens who are covered by § 1225(b)(2) are detained pursuant to a different process" and "'shall be detained for a [removal] proceeding' if an immigration officer 'determines that [they are] not clearly and beyond a doubt entitled to be admitted' into the country." *Id.* (quoting § 1225(b)(2)(A)). Hence, "noncitizens detained under Section 1225(b)(2) must remain in custody for the duration of their removal proceedings, while those detained under Section 1226(a) are entitled to a bond hearing before an IJ at any time before entry of a final removal order." *See Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1247 (W.D. Wash. 2025).

**III. DISCUSSION**

Respondents move to dismiss the petition under Rules 12(b)(1) and 12(b)(6), contending that this Court lacks jurisdiction over Padron's claims and that he has not exhausted his remedies. Both contentions fail.

**A. Subject Matter Jurisdiction**

Respondents argue that three provisions in the INA, found in 8 U.S.C. §§ 1252(a)(5), 1252(g), and 1226(e), strip this Court of jurisdiction over whether Padron's continued detention without a bond hearing violates his constitutional rights. (*See* Dkt. No. 20 at 8–9). None of the provisions deprive this Court of jurisdiction to consider the

question of whether Padron's continued detention without a hearing is unconstitutional.

Respondents first cite 8 U.S.C. § 1226(e) to argue that "[t]he government's detention decisions are not subject to review." (Dkt. No. 20 at 8). Section 1226(e) provides:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

8 U.S.C. § 1226(e). Padron asserts that he is not challenging any discretionary decision of the Attorney General but rather the agency's alleged misapplication of the statutory scheme. (Dkt. No. 22 at 18). He contends that the agency's new interpretation of the INA, and specifically the interpretation of INA Sections 235 (8 U.S.C. § 1225) and 236 (8 U.S.C. § 1226) for detention pending the removal of noncitizens, is legally incorrect. (*Id.*). He claims that this error of law has violated his Fifth Amendment due process rights because it has resulted in his mandatory detention instead of release on bond. Section 1226(e) "does not preclude 'challenges [to] the statutory framework that permits [the noncitizen's] detention without bail.'" *Jennings*, 583 U.S. at 295 (quoting *Demore*, 538 U.S. at 516); *see also Zadvydas v. Davis*, 533 U.S. 678, 688 (2001). Because Padron is challenging the statutory framework that is permitting his detention without bail, Section 1226(e) does not strip this Court of jurisdiction.

Respondents next argue that Section 1252(a)(5) strips the court of jurisdiction. Section 1252(a)(5) provides:

> **5) Exclusive means of review**
> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e). For purposes of this chapter, in every provision that limits or eliminates judicial review or jurisdiction to review, the terms "judicial review" and "jurisdiction to review" include habeas corpus review pursuant to section 2241 of title 28, or any other habeas corpus provision, sections 1361 and 1651 of such title, and review pursuant to any other provision of law (statutory or nonstatutory).

8 U.S.C. § 1252(a)(5). The Fifth Circuit has explained that Section 1252(a)(5) "specifies

that the only means of obtaining judicial review of a final order of removal, deportation, or exclusion is by filing a petition with a federal court of appeals." *Duarte v. Mayorkas*, 27 F.4th 1044, 1051 (5th Cir. 2022). There is no final removal order here; Padron challenges his continued detention pending his removal proceedings.[2] Therefore, Section 1252(a)(5) does not strip this Court of jurisdiction.

Finally, Respondents argue that Section 1252(g) deprives this Court of jurisdiction. Section 1252(g) provides:

> **(g) Exclusive jurisdiction**
> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). The Supreme Court has cautioned that the jurisdictional limits under Section 1252(g) are "narrow," and apply only to the "review of cases 'arising from' decisions 'to commence proceedings, adjudicate cases, or execute removal orders.'" *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020); *see also Reno v. Am.-Arab Anti-Discrimination Comm. (AADC)*, 525 U.S. 471, 482 (1999) (construing Section 1252(g)'s jurisdictional bar as limited to "three discrete actions" and explaining that it is "implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings"). The Supreme Court has "not interpret[ed] this language to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, [the Court has] read the language to refer to just those three specific actions themselves." *Jennings*, 583 U.S. at 294 (citing *AADC,* 525 U.S. at 482–83). The Fifth Circuit "has recognized that section 1252(g) does not bar courts from reviewing an alien detention order, because such an order, 'while intimately related to efforts to deport, is not itself a decision to "execute removal orders" and thus does not implicate section

[2] Likewise, Respondents' cursory mention of Section 1252(b)(9) is also unavailing because it does not pertain to Petitioner's challenge to his ongoing detention. *See Jennings*, 583 U.S. at 292-95 (rejecting expansive application of Section 1252(b)(9) and holding that the section did not deprive the court of jurisdiction to review the petitioners' claims regarding detention).

1252(g).'" *Cardoso v. Reno*, 216 F.3d 512, 516–17 (5th Cir. 2000) (citation omitted). Padron does not challenge any of the three specific actions but instead challenges his continued detention without a bond hearing, which he alleges is unconstitutional. Therefore, his claim is not barred by Section 1252(g), and the motion to dismiss for lack of jurisdiction is denied.

**B. Exhaustion of Remedies**

Respondents contend that this case should be dismissed as premature because Padron has not fully exhausted his administrative remedies.[3] Padron explains that he has appealed the IJ's decision that he is subject to mandatory detention without bond to the BIA but contends that exhausting his remedies would be futile.

There is no statutory requirement to exhaust remedies for alien detention claims; rather, "'[u]nder the INA exhaustion of administrative remedies is only required by Congress for appeals on final orders of removal.'" *Lopez-Arevelo v. Ripa*, No. EP-25-CV-337, 2025 WL 2691828, at *6 (W.D. Tex. Sept. 22, 2025) (citing *Garza-Garcia v. Moore*, 539 F. Supp. 2d 899, 904 (S.D. Tex. 2007); *see also* 8 U.S.C. § 1252(d)(1) ("A court may review *a final order of removal* only if . . . the alien has exhausted all administrative remedies." (emphasis added)). In *Lopez-Arevelo*, the court found that "[r]equiring [the petitioner] to wait, indefinitely, for a ruling on that appeal would be inappropriate because it would exacerbate his alleged constitutional injury—detention without a bond hearing." 2025 WL 2691828, at *6 (citing *Petgrave v. Aleman*, 529 F. Supp. 3d 665, 672 n.14 (S.D. Tex. 2021)).

Numerous courts considering the exhaustion issue for noncitizen detainees have concluded that exhaustion would be futile and/or should be excused because the average wait to be heard in the BIA is more than six months. *See, e.g.*, *Lopez-Arevelo*, 2025 WL 2691828, at *6; *Kostak v. Trump et al.*, No. 3:25-cv-01093, 2025 WL 2472136, at *3 (W.D. La. Aug. 27, 2025) (holding that exhaustion was not required and stating that "[t]his

[3] Respondents' reliance on *Hinojosa v. Horn*, 896 F.3d 305, 314 (5th Cir. 2018), is unavailing. Hinojosa sought immediate review in habeas corpus of the denial of her application for a U.S. passport, when a specific cause of action under 8 U.S.C. § 1503 was available to adjudicate her claim. *Hinojosa* is inapplicable here, where Padron has no other remedy to obtain timely relief from an alleged ongoing, current deprivation of liberty by unlawful detention.

Court does not find Respondents' arguments persuasive because this Court is the proper forum in which Petitioner can bring her constitutional claims."); *Rodriguez*, 779 F. Supp. 3d at 1255–60 (waiving exhaustion because BIA takes 200 days, on average, to hear an appeal); *Lopez-Campos v. Raycraft*, --- F. Supp. 3d ---, 2025 WL 2496379, at *4–5 (E.D. Mich. Aug. 29, 2025) (holding that "prudential exhaustion" should be waived where, as here, "exhaustion would not effectively afford [the petitioner] the relief he seeks" and "BIA lacks authority to review constitutional challenges"); *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425 at *3–4 (E.D. Mich. Sept. 9, 2025) (holding that no statute required exhaustion and that even if prudential exhaustion applied, waiver was warranted because the administrative remedy "is subject to an unreasonable or indefinite timeline"); *Gomes v. Hyde*, No. 1:25-cv-11571, 2025 WL 1869299, at *5–6 (D. Mass. Jul. 7, 2025) (holding that common-law exhaustion should be waived because petitioner was likely to experience irreparable harm if required to wait the 200 days, on average, for the BIA to decide his appeal); *Lopez Benitez v. Francis*, No. 1:25-cv-05937, 2025 WL 2371588, at *13–14 (S.D.N.Y. Aug. 13, 2025); *dos Santos v. Noem*, No. 1:25-cv-12052, 2025 WL 2370988, at *5–6 (D. Mass. Aug. 14, 2025); *Romero v. Hyde*, No. 1:25-cv-11631, 2025 WL 2403827, at *6–7 (D. Mass. Aug. 19, 2025).

Similarly, Padron's appeal to the BIA likely will not occur within a reasonable time or before his removal hearing on October 24, 2025. In this case, exhaustion of remedies would be futile because the unreasonable delay would frustrate Padron's claims. The Court finds that, to the extent that prudential exhaustion of remedies would apply, it should be waived in this case. Therefore, Respondents' motion to dismiss based on exhaustion of remedies is denied.

**C. Motion to Dismiss for Failure to State a Claim**

Respondents contend that although aliens are entitled to due process under the Fifth Amendment, the Supreme Court "has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." (Dkt. No. 20 at 9) (quoting *Demore*, 538 U.S. at 523). They argue that Padron has not made a colorable claim that his detention without bond is unconstitutional. (Dkt. No. 20 at 9). They further claim that Padron is being lawfully detained and charged with removability under Section 1182(a)(6) for unlawfully entering the country and remaining without

authorization. (*Id.*). They contend that nothing in his petition provides a legal basis obligating the government to set a bond for his release and that his detention is neither prolonged nor indefinite. (*Id.* at 9–10).

Among other things, Padron claims that his mandatory detention violates his due process rights under the Fifth Amendment because 8 U.S.C. § 1226(a) applies to his detention and, therefore, he is eligible for a bond hearing. He claims that the BIA misinterpreted the law in *Matter of Q. Li* and that the IJ misapplied the law when it held that he should be detained under INA Section 235(b) rather than under INA Section 236(a), based on Respondents' argument that it did not issue a warrant for his arrest. This error of law, Padron contends, resulted in his mandatory detention without a bond hearing. "The interest in being free from physical detention" is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Hilton v. Braunskill*, 481 U.S. 770, 777 (1987) ("The interest of the habeas petitioner in release pending appeal [is] always substantial."). Padron has alleged facts to state a claim upon which relief may be granted, and Respondents' motion to dismiss under Rule 12(b)(6) is therefore denied.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Petitioner's Petition for Writ of Habeas Corpus, (Dkt. No. 20), is **DENIED**.

It is so **ORDERED**.

**SIGNED** on October 3, 2025.

John A. Kazen
United States District Judge