Case 5:25-cv-00112   Document 30   Filed on 10/08/25 in TXSD   Page 1 of 8

United States District Court
Southern District of Texas
**ENTERED**
October 08, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| JOSE PADRON COVARRUBIAS, | § | |
| Petitioner, | § | |
| v. | § | CIVIL ACTION NO. 5:25-CV-112 |
| MIGUEL VERGARA, ET AL., | § | |
| Respondents. | § | |

## MEMORANDUM OPINION AND ORDER

Petitioner Jose Padron Covarrubias is currently in federal custody at the Rio Grande Processing Center in Laredo, Texas. (Dkt. No. 3 at 8). He has filed a petition for habeas corpus to challenge his continued detention. (Dkt. No. 3). Before the Court is Petitioner's Emergency Opposed Motion for Temporary Restraining Order and Preliminary Injunction, (Dkt. No. 24), and Emergency Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 and Complaint for Declaratory and Injunctive Relief, (Dkt. No. 3).

After the motion for injunctive relief was fully briefed, the Court notified the parties of its intent to consolidate the request for preliminary injunction with the merits of this action pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure, (Dkt. No. 29), and held a hearing, (Min. Entry for Oct. 8, 2025). There were no objections to the consolidation.

### I. BACKGROUND

The background facts were set forth in detail the Court's October 3, 2025, Memorandum Opinion and Order, (Dkt. No. 27), and those facts are not disputed. Padron, a citizen of Mexico, challenges his ongoing detention without a bond hearing. On May 29, 2025, Department of Homeland Security Immigration and Customs Enforcement (ICE) officials apprehended Padron while executing a search warrant at a construction site in

Tallahassee, Florida. (Dkt. No. 3 at 6–7; Dkt. No. 20-2 at 2). Form I-213, Record of Deportable/Inadmissible Alien, a document provided by the Respondents, reflects that Enforcement and Removal Operations (ERO) Miami Field Office transferred Padron to El Paso, Texas, for processing due to lack of space. (Dkt. No. 20-2 at 2). Padron's immigration record states that "ERO El Paso processed [Padron] as Warrant of Arrest/Notice to Appear." *Id.* at 3. The Notice to Appear designated Padron as "an alien present in the United States who has not been admitted or paroled," rather than "an arriving alien." (Dkt. No. 20-3 at 1). The Notice to Appear also states that Padron "entered the United States at or near Laredo, Texas on or about September 16, 2001," twenty-four years ago. *Id.* It further claims that he "was not admitted or paroled after inspection by an Immigration Officer." *Id.* Thus, the documents provided by the Respondent show that Padron was apprehended in Tallahassee, Florida, after having been in the United States for almost 24 years, and that he was initially processed in El Paso under a "Warrant of Arrest/Notice to Appear." (Dkt. Nos. 20-2, 20-3).

At Padron's bond redetermination hearing, the Immigration Judge (IJ) determined, as a matter of law based on *Matter of Q. Li*, that Padron was subject to mandatory detention under 8 U.S.C. Section 1225(b)(2) as an applicant for admission who was arrested and detained without a warrant.

Padron appealed the IJ's determination and filed this petition for a writ of habeas corpus, maintaining that he in entitled to a bond hearing because he should be considered detained under 8 U.S.C. § 1226(a). On October 3, 2025, the Court denied Respondents' motion to dismiss, holding that this Court has jurisdiction over his detention claim and waiving any exhaustion requirement. On October 8, 2025, the Court held a hearing on the pending motion.

Padron requests, among other things, that this Court issue an order requiring the Respondents to release him or, alternatively, to hold a bond hearing and enjoin his continued detention without a bond hearing. (Dkt. No. 24 at 6).

## II. LEGAL STANDARDS

A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the Constitution or federal law. 28 U.S.C. § 2241. Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive

detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003); *Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005) (unpublished op.).

### III. DISCUSSION

This case is one of many recent habeas petitions filed challenging the federal government's detention authority during the pendency of removal proceedings under 8 U.S.C. § 1225(b). *See Buenrostro-Mendez v. Bondi*, No. H-25-3726, slip op. at 3 (S.D. Tex. Oct. 7, 2025) (collecting cases). Two statutes in the Immigration and Nationality Act (INA) principally govern this detention: 8 U.S.C. §§ 1225 and 1226. Section 1226 provides the general process for arresting and detaining noncitizens who are present in the United States and eligible for removal. 8 U.S.C. § 1226. The Supreme Court has explained that Section 1226(a) "sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of an alien 'pending a decision on whether the alien is to be removed from the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) (quoting § 1226(a)). "[T]he Attorney General 'may release' an alien detained under § 1226(a) 'on bond or conditional parole.'" *Id.* (citation modified). But "aliens who are covered by § 1225(b)(2) are detained pursuant to a different process" and "'shall be detained for a [removal] proceeding' if an immigration officer 'determines that [they are] not clearly and beyond a doubt entitled to be admitted' into the country." *Id.* (quoting § 1225(b)(2)(A)). Hence, "noncitizens detained under section 1225(b)(2) must remain in custody for the duration of their removal proceedings, while those detained under section 1226(a) are entitled to a bond hearing before an IJ at any time before entry of a final removal order." *See, e.g., Rodriguez v. Bostock*, --- F.Supp.3d ---, 2025 WL 2782499, at *3 (W.D. Wash. Sept. 30, 2025).

The principal issue here is whether Padron has been erroneously categorized as a detainee subject to 8 U.S.C. § 1225(b)(2), which prescribes mandatory detention during removal proceedings, or if he is subject to 8 U.S.C. § 1226(a), which provides for discretionary detention and a bond hearing regarding whether the noncitizen is a flight risk or poses a danger to the community. Padron contends that he is being detained under

Section 1226(a) and should have a bond hearing, but Respondents argue that he is subject to mandatory detention under Section 1225(b)(2), and therefore, not entitled to a bond hearing.

The difference in interpretation emanates from the Government's recent reevaluation of immigration detention authority. (*See* Dkt. No. 22-1). The Department of Homeland Security (DHS) and Department of Justice (DOJ) released interim guidance on July 8, 2025, announcing a new legal position on detention and release authorities. (*Id.*) ("Interim Guidance Regarding Detention Authority for Applicants of Admission"). The guidance interprets INA Section 235 (8 U.S.C. § 1225) as applying to the detention of all "applicants for admission," including all noncitizens who have not been admitted, whether or not they arrive at a port of entry. (*See* Dkt. No. 22-1 at 1).

Padron cites numerous district court cases holding that the Respondents' new policy violates the plain language of the INA and is unlawful. (Dkt. No. 24 at 8).[1] Padron contends, and the Court agrees, that whether he falls under Section 1226(a) or 1225(b)(2) is a matter of statutory interpretation. Statutory interpretation is the province of the courts, not agencies. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 413 (2024).

The Court finds that Section 1226, not Section 1225, applies to Padron's detention. As almost every district court, including another court in the Southern District of Texas, has concluded, "the statutory text, the statute's history, Congressional intent, and § 1226(a)'s application for the past three decades" support application of Section 1226.

---

[1] *See Choglло Chafla v. Scott*, No. 2:25-cv-00437, 2025 WL 2688541, at *1 (D. Me. 2025); *Hasan v. Crawford*, No. 1:25-CV-1408, 2025 WL 2682255 (E.D. Va. Sept. 19, 2025); *Arce v. Trump*, No. 8:25CV520, 2025 WL 2675934 (D. Neb. Sept. 18, 2025); *Vazquez v. Feeley*, No. 2:25-CV-01542, 2025 WL 2676082 (D. Nev. Sept. 17, 2025); *Palma v. Trump*, No. 4:25CV3176, 2025 WL 2624385 (D. Neb. Sept. 11, 2025); *Carlon v. Kramer*, No. 4:25CV3178, 2025 WL 2624386 (D. Neb. Sept. 11, 2025); *Perez v. Kramer*, No. 4:25CV3179, 2025 WL 2624387 (D. Neb. Sept. 11, 2025); *Sampiao v. Hyde*, No. 1:25-CV-11981, 2025 WL 2607924 (D. Mass. Sept. 9, 2025); *Martinez v. Noem*, No. 5:25-CV-01007, 2025 WL 2598379 (W.D. Tex. Sept. 8, 2025); *Herrera Torralba v. Knight*, No. 2:25-CV-01366, 2025 WL 2581792 (D. Nev. Sept. 5, 2025); *Carmona-Lorenzo v. Trump*, No. 4:25CV3172, 2025 WL 2531521 (D. Neb. Sept. 3, 2025); *Fernandez v. Lyons*, No. 8:25CV506, 2025 WL 2531539 (D. Neb. Sept. 3, 2025); *Perez v. Berg*, No. 8:25CV494, 2025 WL 2531566 (D. Neb. Sept. 3, 2025); *Leal-Hernandez v. Noem*, No. 1:25-CV-02428, 2025 WL 2430025 (D. Md. Aug. 24, 2025); *Jacinto v. Trump*, No. 4:25CV3161, 2025 WL 2402271 (D. Neb. Aug. 19, 2025); *Garcia Jimenez v. Kramer*, No. 4:25CV3162, 2025 WL 2374223 (D. Neb. Aug. 14, 2025); *Anicasio v. Kramer*, No. 4:25CV3158, 2025 WL 2374224 (D. Neb. Aug. 14, 2025); *Mohammed H. v. Trump*, 786 F. Supp.3d 1149, 2025 WL 1692739, at *5–6 (D. Minn. June 17, 2025); *Günaydin v. Trump*, 784 F. Supp. 3d 1175 (D. Minn. 2025); *Lazaro Maldonado Bautista v. Ernesto Santacruz Jr.*, 5:25-cv-01873, Dkt # 14 (C.D. Ca. Jul. 28, 2025); *Rodriguez v. Bostock*, No. 3:25-CV-05240, 2025 WL 1193850, at *16 (W.D. Wash. Apr. 24, 2025); *Gomes v. Hyde*, No. 1:25-CV-11571, 2025 WL 1869299, at *9 (D. Mass. July 7, 2025)).

*Buenrostro-Mendez*, No. H-25-3726, slip op. at 5–6 (quoting *Pizarro Reyes*, 2025 WL 2609425, at *4 and citing *Lopez-Arevelo v. Ripa*, No. EP-25-CV-337, 2025 WL 2691828, at *7 (W.D. Tex. Sept. 22, 2025); *Rodriguez*, 2025 WL 2782499, at *1 & n.3; *Belsai D.S. v. Bondi*, No. 25-cv-3682, 2025 WL 2802947, at *6 (D. Minn. Oct. 1, 2025)). "The Court need not repeat the 'well-reasoned analyses' contained in these opinions and instead simply notes its agreement." *Buenrostro-Mendez*, No. H-25-3726, slip op. at 5 (citing *Chogllo Chafla v. Scott*, No. 2:25-cv-437, 2025 WL 2688541, at *5 (D. Me. Sep. 21, 2025)).

The Court also highlights two particularly strong statutory interpretation arguments that undercut Respondents' interpretation. First, Section 1225(b)(2)(A) comprises "applicants for admission" who are (1) not defined in Section 1225(b)(1), *see* § 1225(b)(2)(B)(ii), and (2) are "seeking admission." § 1225(b)(2)(A). Padron contends that he is not "seeking admission" as that term should be understood and, therefore, he fits within the default provision of Section 1226(a). Respondents counter that an "applicant for admission" and one who is "seeking admission" are equivalent and that, because Padron is an "applicant for admission" he is also "seeking admission" and that Section 1225(b)(2)(A) applies to him.

When two different phrases are used in a statute, "a variation in terms suggests a variation in meaning." A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 170 (2012) (explaining the "Presumption of Consistent Usage" and noting that "where the document has used one term in one place, and a materially different term in another, the presumption is that the different term denotes a different idea"). Thus, to fit within Section 1225(b)(2)(A), a noncitizen must be both an "applicant for admission" and one who is "seeking admission." *Id.* An "applicant for admission" is "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)." 8 U.S.C. § 1225(a)(1). However, "seeking admission" is a present-tense, or current, ongoing action, and varies materially from the passive state of being an applicant. "Words are to be given the meaning that proper grammar and usage would assign them." A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 140

(2012).

Padron argues that he was not actively seeking admission, as that phrase is commonly used and understood, when he was working in construction, having resided in the United States for over two decades when ICE raided his job site. The Court agrees. Although he may be considered an "applicant for admission" as that is defined under Section 1225(a)(1), he cannot be described as "seeking admission" because he was not currently and actively seeking to be admitted to the United States when he was apprehended. *Rodriguez*, 2025 WL 2782499, at *17–19; *Cordero Pelico*, 2025 WL 2822876, at *8 (citing cases). Thus, he does not fit within the categories in Section 1225(b), and must fit within Section 1226(a), the default provision for noncitizens "already present" in the country and arrested by ICE who do not fit within Section 1225(b). *See Jennings*, 583 U.S. at 288.

Second, reading Section 1226 to apply only to "deportable" aliens and not to "inadmissible" aliens like Padron would render several portions of the statute superfluous. If all criminal aliens were subsumed within Section 1225, there would be no need for Subsection 1226(c). Congress recently amended Section 1226 when it enacted the Laken Riley Act, codified in Subsection 1226(c)(1)(E). Laken Riley Act, Pub. L. No. 119-1, sec. 236, § 2, 139 Stat. 3, 3 (2025). Were the Court to adopt Respondents' new, expansive view of Section 1225, the Laken Riley Act would be surplusage. *See* A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 174 (2012) (explaining the Surplusage Canon: "None should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence."); *see also Rodriguez*, 2025 WL 2782499, at *19 ("'[T]he Court does not lightly assume Congress adopts two separate clauses in the same law to perform the same work,' and this Court is not persuaded that Congress did so in passing the Laken Riley Act.") (quoting *United States v. Taylor*, 596 U.S. 845, 857 (2022)).

The Supreme Court has explained that its reluctance to treat statutory terms as surplusage "increases when Congress amends a statute, as we ordinarily presume that when Congress does so, 'it intends its amendment to have real and substantial effect.'" *Bufkin v. Collins*, 604 U.S. 369, 386 (2025) (quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 258–259 (2004)); *Van Buren v. United States*, 593 U.S. 374,

393 (2021). As Padron points out, under Respondents' position, noncitizens to whom the Laken Riley Act would apply would already be subject to mandatory detention under Section 1225, rendering Congress's new amendment redundant. (Dkt. No. 22 at 9).

Because courts must give effect to all the provisions in a statute, the recent amendments should be read in harmony with the agency's longstanding construction of applying Section 1226 to noncitizens who are "already present" in the country, *Jennings*, 583 U.S. at 303; *see also Monsalvo Velazquez v. Bondi*, 145 S. Ct. 1232, 1242 (2025) (noting that "one of [the Supreme Court's] customary interpretive tools" is that "[w]hen Congress adopts a new law against the backdrop of a 'longstanding administrative construction,' [the Court] generally presumes the new provision should be understood to work in harmony with what has come before.") (quoting *Haig v. Agee*, 453 U.S. 289, 297–98 (1981)). Reading Subsection 1226(c), which applies by its terms to both "deportable" aliens and "inadmissible" aliens, in harmony with Subsection 1226(a), Padron is detained under Subsection 1226(a) and is entitled to a bond hearing. Along with most other courts that have considered this issue,[2] the Court finds that Padron is not properly detained without a bond hearing under Section 1225, and instead, Section 1226 applies.

A district court has equitable discretion in determining the appropriate remedy "as law and justice require" for unlawful detention in a habeas petition. *See Brown v. Davenport*, 596 U.S. 118, 127–28 (2022). The Court finds that the specific harm Padron suffered—unlawful detention without a bond hearing—is remedied by granting his request for a bond hearing under Section 1226(a) and enjoining Respondents from denying bond on the basis that he is detained under Section 1225(b)(2). Given the liberty interest at stake, the Court finds that if a bond hearing is not provided promptly, no later than October 17, 2025, Padron must be released.

Therefore, the Court, exercising its equitable discretion in fashioning appropriate habeas relief, further orders Respondents to immediately release Padron if a bond hearing is not provided by October 17, 2025, unless and until it is determined that he

---

[2] *See supra* n.1. *But see Chavez v. Noem*, 2025 WL 2730228 (S.D. Cal, Sept. 24, 2025) (finding that the plain meaning of the statutes justifies detention under Section 1225); *Vargas Lopez v. Trump*, 2025 WL 2780351 (D. Neb., Sept. 30, 2025) (interpreting Sections 1225 and 1226 as overlapping provisions). The Court respectfully disagrees with the interpretation of the statutes in these cases.

should be detained pursuant to the standard set forth in 8 U.S.C. § 1226. [3] *See e.g.*, *Lopez-Campos v. Raycraft*, No. 2:25-CV-12486, 2025 WL 2496379, at *10 (E.D. Mich. Aug. 29, 2025); *Velasquez Salazar v. Dedos*, No. 25-cv-835, 2025 WL 2676729, at *9 (D.N.M. Sept. 17, 2025); *Kostak v. Trump*, No. CV 3:25-1093, 2025 WL 2472136, at *4 (W.D. La. Aug. 27, 2025); *Lopez-Arevelo*, 2025 WL 2691828, at *13.

## IV. CONCLUSION

For the foregoing reasons, Padron's Emergency Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 and Complaint for Declaratory and Injunctive Relief, (Dkt. No. 3), is **GRANTED in part**. Padron's Opposed Motion for Temporary Restraining Order and Preliminary Injunction, (Dkt. No. 24), is **DENIED as moot**.

The Court **ORDERS** that Respondents release Padron unless he is provided a bond hearing under 8 U.S.C. § 1226(a) **by October 17, 2025.** If Padron is released, Respondents must notify Padron's counsel of the exact time and location of Padron's release **no less than two hours** before his release.

No later than **October 21, 2025, at 5:00 p.m.,** the parties shall provide the Court with a status update concerning the results of any bond hearing conducted pursuant to this Order, or if no bond hearing was held, advise the Court regarding Padron's release. The parties should also notify the Court if the Government seeks a stay of the IJ's bond decision under 8 C.F.R. § 1003.19(i).

It is so **ORDERED**.

**SIGNED** on October 8, 2025.

John A. Kazen
United States District Judge

---

[3] Padron's habeas petition challenges his detention on both statutory and constitutional grounds. As in *Pizarro Reyes* and *Buenrostro-Mendez*, the Court "'will decline to decide the merits' of the due process claim 'given that the Court will grant the relief he seeks based on its interpretation of the applicability of § 1226(a).'" *Buenrostro-Mendez*, No. H-25-3726, slip op. at 6 (quoting *Pizarro Reyes*, 2025 WL 2609425, at *8).